2024 IL App (2d) 240232-U
No. 2-24-0232
Order filed June 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   24-CF-381 |
| SANTINO G. HIGHTOWER, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's detention decision was not an abuse of discretion, where the police report did not support defendant's version of events and where defendant was on probation and supervised release when he committed the alleged offenses.   Affirmed.

¶ 2    Defendant, Santino G. Hightower, timely appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).   For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On February 26, 2024, defendant was charged with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2022)) (Class 2) and two counts of domestic battery (*id.* § 12-3.2(a)(2)) (Class A).    The allegations arose from a dispute on February 24, 2024, during which defendant allegedly strangled Stephanie Berke, the mother of his children, and pulled out clumps of her hair.

¶ 5    On March 6, 2024, the State petitioned to deny defendant pretrial release, alleging that he was charged with detainable offenses and that no condition or combination of conditions could mitigate the real and present danger to Berke.    725 ILCS 5/110-6.1(a)(4) (West 2022).

¶ 6    At the hearing on the State's petition, the State recounted defendant's criminal history, which included a 2022 conviction for aggravated assault with a motor vehicle and for which he was on probation.    Upon his release on bond in that case, defendant was arrested and charged with aggravated battery to a peace officer causing great bodily harm.    He pleaded guilty to aggravated battery to a peace officer and aggravated fleeing and eluding causing bodily injury and was sentenced to 42 months' imprisonment.    In January 2024, defendant was paroled.    The State moved to admit into evidence People's exhibit No. 1, the synopsis from this case, and People's exhibit No. 2, the synopsis from the 2022 case for aggravated assault with a motor vehicle. Defendant objected to admission of exhibit No. 2, arguing that it was inappropriate to allow into evidence the police synopsis, where defendant pleaded guilty and it was unclear that the allegations in the police synopsis were the same as those to which he ultimately stipulated.    After further argument, the court admitted both exhibits, finding them relevant with respect to defendant's criminal history indicative of violent abuse or assaultive behavior.

¶ 7    The State next summarized the synopsis of this case, reflecting that Berke called the police after she and defendant argued.    Their children were sleeping, so they went outside to the car,

where the argument continued. Defendant reached over and began choking Berke, who provided police with "very detailed" information about the incident, including that she was seated in the driver's seat, facing forward, while defendant turned his body toward her and placed his left hand on the back of her head or neck and his right hand over her throat. Defendant applied pressure until she was unable to breathe, and, in fear of losing consciousness, Berke attempted to raise herself off the seat, almost to the ceiling of the vehicle, trying to get air, while defendant's hands remained around her neck. Berke began scratching defendant, which led to him releasing her. Police observed, as described in the synopsis, several bruises/possibly-ruptured blood vessels on the left side of Berke's neck, approximately two to three inches in length that appeared consistent with trauma induced by finger pressure. After the strangulation, defendant wanted Berke to drive him to a liquor store and, as she remained afraid of him, she did so; while they were driving, defendant grabbed her by the hair and pulled her towards the passenger seat, causing her to almost crash the car and pulling out clumps of her hair. During this time, defendant made multiple threats to kill Berke and the children. After Berke returned home, she gathered her children and contacted police.

¶ 8 The State also summarized the events as described in People's exhibit No. 2, where, in sum, defendant, after an argument with a neighbor earlier in the day, followed the neighbor in a car and drove over a curb and exited the roadway in an attempt to strike him. A third-party witness corroborated the victim's statement and called 911.

¶ 9 Defense counsel noted that, prior to his arrest, defendant was seeking work and, if released, defendant would continue staying with his grandmother in Campton Hills, where he resided prior to this arrest. Defendant helps to care for his grandmother, who is ill. In addition, counsel represented that he spoke with Berke, explained who he was and that he represented defendant,

and advised that she was not required to speak with him. "She did not want to." Nevertheless, apparently, they spoke, and counsel asked Berke whether the events in People's exhibit No. 1 happened the way they were summarized in that synopsis. She told him that she did not recall the incident, as she had been highly intoxicated. Further, defense counsel represented that Berke told him she remained in contact with defendant after this incident, and she was not in fear for her safety. Berke told counsel that defendant did not live with her in Batavia (and had not previously), and that he only came to the house to visit their three children.

¶ 10 Defense counsel continued that defendant "absolutely" disputes that this incident took place, contends there was no argument in a vehicle, and that, while there was an argument about the children while he was inside the home, he simply left. Later that night, Berke even dropped off their 10-year-old at his grandmother's house, where defendant was staying. Further, defendant's position was that, the day before this alleged incident, Berke was in an altercation at her mother's house. Defendant claimed he had taken a photo of the back of Berke's head with hair missing and, although he did not have his phone with him in custody, counsel asked him to obtain it for a future date. Defendant also alleged that a police report was made of the incident between Berke and her family at her mother's house in Batavia, and that his children witnessed that event. Moreover, defendant told counsel that, since the alleged February 24 incident, he and Berke had been in constant communication, had seen each other almost every day, and he had stayed at her place in Batavia. In fact, according to defendant, he and Berke were Facetiming right before he was taken into custody.

¶ 11 Defense counsel argued that the court was forced to decide between (1) the synopsis, which reflects the interpretation of the officer writing it, or (2) the alleged victim, who was present in court (but did not testify) saying to counsel that she did not remember anything, and defendant,

explaining what, in his opinion, happened. Counsel further argued that, while he could appreciate the State's position that some of defendant's criminal history was violent in nature, he emphasized that defendant had no history of being abusive to an intimate partner, which is what the court was being asked to decide; namely, whether the State's evidence supported a finding that defendant was a real and present danger to Berke. Counsel noted that, based on his proffer, Berke had "zero concerns for her safety," if defendant were released, and, if the "synopsis were true, I would *** think she wouldn't be here to say otherwise. *** [I]f it was because she was in fear[,] it wouldn't be to tell me that she is not in fear[.]" Counsel asked the court to deny the petition and release defendant with "least-restrictive conditions."

¶ 12    The court granted the State's petition. The court noted that, even when provided with proffers, it was required to make credibility decisions and, while it believed that Berke told defense counsel that she does not have any recollection and that she was intoxicated, that information was not borne out by the synopsis,

> "written by a police officer who talked to her within an hour of it happening and mentions no intoxication level whatsoever regarding Ms. Berke. In regards to what reason would she have to come here, she's here with a family member from the defendant here in court today. So I don't know what, if there's financial reasons, I don't know the answer to that question."

The court noted that Berke would not be the first witness to tell a different story upon appearing in court and, in sum, it believed the version of events as described in the synopsis, as it was corroborated by the officer observing injuries—not just the hair clumps, but marks on her neck— consistent with what Berke originally claimed happened. Moreover, the court noted that Berke left Batavia, drove to Elgin with her three kids to remove herself from defendant that night, and

they were with her in Elgin at her friend's house when the police arrived, which corroborates that this incident happened, even if she was now telling defense counsel that she does not remember and was intoxicated. "[A]t this point in time[,] I don't believe that to be the case." The court found that the State had proved by clear and convincing evidence that the proof was evident and presumption great that defendant committed aggravated domestic battery (strangulation) and domestic battery. Noting that Berke provided "extremely detailed" information to the officer, the court recounted that the proffer as reflecting,

> "defendant placed his left hand on the back of her head and neck area, his right hand over the area of her throat, and applied pressure to her throat to the point where she was unable to breathe, that she tried to adjust herself in the seat and the defendant continued to choke her.

> [Berke] says she scratched the defendant in self defense and he released her. The officer observes several bruises and possible broken blood vessels on the left side of her neck. Bruises were approximately two to three inches in length and appeared to be consistent with trauma induced by pressure being applied by another person's fingers. So that corroborates a very detailed statement of what happened in there.

> Again, today she's saying she was intoxicated. Nothing in the report indicates *** by the officer in the synopsis that she was intoxicated while she was giving this detailed statement within an hour of it occurring. In addition[,] he made multiple threats to kill her and her children while he was driving to the liquor store, while he was also pulling her hair during the drive."

¶ 13    The court also found that the State proved by clear and convincing evidence that defendant posed a real and present threat to Berke's safety. The court based its finding on the details from

the incident, as well as defendant's criminal history, which reflected two prior violent offenses. The court explained that defendant had been sentenced to prison for aggravated battery to a police officer and aggravated assault for using a motor vehicle to try to strike another individual.

"Both of those are violent offenses. So he does have a history of violence. It doesn't matter if this is the first time he's ever choked or done something to an intimate partner.

That isn't what it [the statute] says. It says the history and characteristics of defendant's prior criminal history indicative of violent, abusive, or assaultive behavior. It doesn't say only regarding what kind of charge it is now."

The court further found that, in this case, defendant reacted with violence to an argument about Berke's alleged infidelity, while in the motor vehicle case, defendant's response to an argument was to try to hit the other person with his car. "So, again, the defendant's response to an argument has been violent in the past and was violent this time as well."

¶ 14    Finally, the court provided three reasons for finding that the State proved by clear and convincing evidence that no condition or combination of less-restrictive conditions could mitigate defendant's real and present threat to Berke. First, the court noted that, when the charged incident occurred, defendant was on mandatory supervised release (MSR) for aggravated battery of a police officer and had been released from custody only one month prior to this incident. Conditions of MSR included not committing criminal activity and defendant did not follow that condition. Second, the court found that defendant was also on probation when the charged incident occurred, which likewise had the condition of no further criminal activity, and, yet, when defendant should have been acting at his best, he allegedly committed this offense.

"So I do not believe me telling him to leave her alone is going to have any effect. I don't believe that me telling him not to commit any new offenses is going to have any effect because he has continued to do that even under the eye of a parole officer and a probation officer."

Finally, the court found that neither electronic home monitoring (EHM) nor GPS would avoid the real and present threat defendant posed, because there would be times he was not monitored (such as, if he obtained a job he had to go to and from, he would not be confined to a certain area). The court also ordered that defendant have no contact with Berke (although the assistant State's Attorney represented that Berke told her she did *not* wish that to be the case) and further summarized its findings in a written order.

¶ 15    On March 18, 2024, defendant filed a notice of appeal, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), and defendant stands on his notice of appeal. The State has submitted a memorandum opposing defendant's appeal.

¶ 16                                    II. ANALYSIS

¶ 17    Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and

present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 18    We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the court's decision is unreasonable. *Id.* Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id.*

¶ 19    In his notice of appeal, defendant checked boxes raising three overarching challenges to the court's detention decision, with written elaboration accompanying each section. First, he argues that the State failed to meet its burden of proving that he committed the charged offenses. Defendant elaborates that the State's proffered sworn police synopsis reported that he strangled Berke; however, he proffered that Berke was intoxicated and could not recall any of the events. Further, he proffered that Berke was in a fight the day prior to the alleged incident, while she was at her family's home, and that police were called and a report was made at that time. Defendant asserts that he took photos of Berke's head from that day, which showed missing hair, and that, although he was not present for the incident, his children were present to witness the fight at Berke's family's house. In addition, defendant asserts that Berke sustained facial injuries from that fight as well.

¶ 20    We reject defendant's arguments, which do not demonstrate that the court's findings were contrary to the manifest weight of the evidence.    Rather, the arguments simply attack the court's credibility determinations.    However, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses."    *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44; see also *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11 (applying *Vega* in a pretrial-release context).    Here, the court's decision to find more credible (and sufficient to satisfy the State's burden) the events described in a sworn police synopsis and that were corroborated by the officer's observation of injuries consistent with Berke's detailed and contemporaneous description of events than Berke's position, as represented by counsel's proffer, that actually she was too intoxicated to remember the event, which was not borne out in the police synopsis, was not unreasonable.    Similarly, the court's decision to rely on the synopsis over defendant's assertion that the injuries happened to Berke a day earlier at her family's home, that there was a police report for the incident, that he had a picture to that effect, and his children were witnesses to that fight, was certainly not unreasonable, given the fact that neither the alleged police report, photograph, or witnesses were available for the court to review or consider in support of that position.    Again, we will not disturb the trial court's determination regarding the weight or credibility of evidence.    In sum, the court's finding that the State met its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the charged offense was not against the manifest weight of the evidence.

¶ 21    Next, defendant argues that the State failed to meet its burden to establish that he poses a real and present threat to Berke.    He elaborates that Berke was present in court for the detention hearing, and he proffered that she stated she was intoxicated on February 24, 2024, and did not recall what occurred.    In addition, defendant asserts that Berke had also stated that she and

defendant were in contact with each other, that he stayed the night at her house since the incident, and she is not in fear for her safety. Further, defendant argues that the court erred when determining credibility, because it intimated that Berke was in court with a member of defendant's family (which he explains was his grandmother's boyfriend), possibly for financial reasons. He notes that he was released on MSR one month before the alleged incident, had proffered that he was looking for work, and that he had not worked since his release. Defendant asserts, "[t]he [c]ourt was searching for nefarious reasons to not believe [Berke]." Finally, defendant argues that the court erred by allowing the State to proffer from a synopsis in a prior case to which defendant pleaded guilty, because the State should only have been allowed to proffer the factual basis to which he actually stipulated. He contends further that the court erred in disregarding his argument that domestic battery is materially different in nature to other types of battery, noting that the fact that he has no criminal history related to domestic violence is relevant to whether he possesses a danger to Berke.

¶ 22 We reject defendant's arguments. Again, the court's findings were not unreasonable. Although defense counsel represented that Berke told him that she was intoxicated and could not recall the incident, as well as that she was in contact with defendant and did not fear for her safety, the court did not find those assertions credible. We note that Berke, although present, did not testify. Moreover, victims of domestic violence may be subject to intimidation or recant their allegations. See *e.g.*, *People v. Stechly*, 225 Ill. 2d 246, 341 (2007) ("Domestic violence cases are different, however, because those cases have a low victim-cooperation rate, which is usually due to either a general fear of the defendant or some remaining partiality on the victim's part toward the defendant.") (Thomas, C.J., dissenting). Where the police synopsis here did not reflect that Berke was intoxicated when she reported the incident, the court was not unreasonable

in finding an assertion that she was too intoxicated to recall the incident happening, at this stage in the proceedings, not credible.

¶ 23    In addition, we disagree with defendant's assertion that the court was looking for "nefarious" reasons to find Berke not credible, as well as his challenge to the court's comment that perhaps she was present in court with defendant's family for financial reasons.    Indeed, the court expressed multiple times that it did not find credible Berke's present statement to counsel that she was intoxicated and could not recall events, not for nefarious reasons, but, rather, because that assertion was not *borne out* by the sworn police synopsis.    Further, the court's query whether Berke was with defendant's family in court for financial reasons, was, again, not "nefarious," but was responsive to defense counsel's suggestion that, if she was afraid for safety, there would be no reason for Berke to be present.    In addition, we note that the court did not make a finding as to why Berke was present, and, in fact, stated that it not *know* the reason.    Instead, it essentially simply rejected the suggestion that her presence necessarily meant she did not fear defendant.

¶ 24    We also do not find error with the court's consideration of the police synopsis from his aggravated-battery-to-a-peace-officer conviction, because the court did not heavily rely on the *facts* of that synopsis, but, rather, admitted it merely to the extent it reflected violence in defendant's criminal history.    Relatedly, we find no error with the court's analysis of the relevance of any violence in defendant's criminal history to this case, even where the history did not reflect domestic violence.    The court was not unreasonable to consider that, in the motor vehicle incident and this case, defendant reacted violently after having arguments with individuals. In sum, the court's finding that defendant poses a real and present threat to Berke was not against the manifest weight of the evidence.

¶ 25　Finally, defendant argues that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate against any threat he poses to Berke. He elaborates that the court wrongfully discounted both his proffer from Berke about her safety and lack of fear of defendant, as well as its own finding that defense counsel was credible in his proffer about what Berke told him. Defendant concedes that the court expressed its reasons for not finding Berke credible, but he argues that those reasons were not supported by the evidence or testimony because he and Berke do not live together, he resides with his grandmother, and Berke and the children live separately from him. Defendant asserts that he visited and slept over after the alleged incident, and Berke wanted contact with defendant, as noted by the assistant State's Attorney. He contends again that the court erred in finding that he was a real and present threat.

¶ 26　We disagree. First, defendant made no specific argument to the trial court regarding what least-restrictive conditions would be appropriate, so, to the extent he argues now that the court erred in not imposing such conditions, that argument is both forfeited and undeveloped, as he does not on appeal describe less-restrictive conditions that would be appropriate and would mitigate the risk of harm to Berke. See, *e.g.*, *Inman*, 2023 IL App (4th) 230864, ¶ 13; *People v. Washington*, 2024 IL App (2d) 230598-U, ¶ 10. Second, we have already rejected defendant's challenges to the court's credibility findings, which were not unreasonable. In sum, the court did not abuse its discretion in granting the State's petition to deny defendant pretrial release.

¶ 27　　　　　　　　　　　　III. CONCLUSION

¶ 28　For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 29　Affirmed.